IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTINA BOGASKI, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COUNTY OF ALLEGHENY, )<br>PENNSYLVANIA, )<br>)<br>Defendant. ) | Civil Action No. 15 - 487<br><br>Magistrate Judge Lisa Pupo Lenihan |

### MEMORANDUM OPINION
### ON DEFENDANT'S MOTION TO DISMISS

**I. Summation**

For the reasons set forth below, Defendant's July 30, 2015 Motion to Dismiss (ECF No. 15) will be denied. This case was filed by Complaint of April 12, 2015 (ECF No. 1), and Amended on July 6, 2015 (ECF No. 11). Plaintiff, who resigned from Defendant's employment with the filing of her Complaint, alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). More specifically, she has filed claims for subjection to a sexually hostile work environment, disparate impact, and constructive discharge. Defendant County of Allegheny ("Defendant") argues that is entitled to dismissal on grounds that Plaintiff failed to sufficiently inform Defendant of her alleged hostile work conditions, failed to allege conduct by Defendant sufficient to base liability, failed to exhaust her administrative remedies as to some alleged events/circumstances, failed to allege an impact on employment "opportunities" as opposed to "conditions", and failed to allege sufficient

1

statistical data as necessary to maintain a disparate impact claim. The Court finds none of Defendant's assertions meritorious.

II. **Factual and Procedural History**

Plaintiff recounts, in a well-written Amended Complaint, a more than two year history of her employment with Defendant which, if borne out in the evidentiary phase of litigation, is replete with disturbing instances of (a) gender-based discrimination and retaliation, (c) extensive personal attacks/vilification, and (c) at best inept, indifferent and/or delinquent institutional response and at worst institutional disregard for and further violation of constitutionally-protected rights.[1]

More specifically, Plaintiff's Amended Complaint depicts her January, 2013 hiring, as the sole female "laborer" (employees responsible for park cleaning and maintenance) in Defendant's Public Works Department,[2] as one in which she was warned of likely sexually explicit and offensive speech, with no discussion or guidance regarding reporting or recourse/redress in the event of sexual harassment. That is, Plaintiff describes an initial hiring in which Defendant essentially presented (a) Plaintiff's acceptance of employment as a laborer in its Public Works Department as an assumption of the risk of sexual harassment and (b) violation of the protections of, *e.g.*, Title VII, as an inherent condition of employment. See Amended Complaint at 2-3.

---

[1] Compare Defendant's Brief in Support of Motion to Dismiss ("Defendant's Brief in Support") at 11 (somewhat troublingly asserting that Plaintiff "merely alleges she is one of the few women that work for the Department . . . and that there were some missteps in how her . . . sexual-harassment claim was handled").

[2] Plaintiff further assets she was one of approximately 19 female employees in the Department of Public Works, which employs over 200 individuals (*i.e.*, less than 10% females).

2

Immediately upon beginning work at Defendant's North Park location, Plaintiff was subjected to sexually inappropriate and offensive comments by male staff, particularly laborer Tom Long ("Long"), who in March, 2013 slapped Plaintiff's buttocks in the presence of co-workers, Country tradesmen and Foreman Jim Kelly ("Kelly"). See id. at 3-4. Plaintiff strongly objected and she was thereafter subjected to a "campaign of sexual harassment, bullying, verbal abuse and retaliation" by Long and other employees of Defendant. Specific instances alleged included vandalization of her property (such as tearing apart her boots and filling them with dirt and bugs, covering her vehicle with phlegm/spit, blowing dirt/debris into her open car windows), name-calling (such as referring to Plaintiff as a "bitch") and "vicious, sexually-based, unfounded rumors alleging intimate relations with co-workers". Id. at 4-5. Incidents took place in the presence of, or were immediately reported to Foreman Kelly or Plaintiff's Park Supervisor, Gil Coda ("Coda"). Coda advised Plaintiff to stop using the common area facilities; she also discontinued any use of her locker for personal items. Although Coda repeatedly warned/verbally reprimanded the male laborers, and reported the abuse to his supervisors, no action was taken by Defendant to investigate or address the campaign of sexual and retaliatory abuse and it continued through Spring, 2014. Id. 5-6. Two separate illustrative incidents of abuse in Spring, 2014, include alleged plantings of a snake and a blood-soaked feminine pad inside Plaintiff's work vehicle.

In the summer of 2014, the Department of Public Works Maintenance Supervisor found Plaintiff in tears and she described her work conditions. The next day Plaintiff was contacted by a Department of Human Resources employee and Plaintiff provided extensive information, which she was assured would be confidential. Details of her conversation were, however, quickly widespread and the retaliatory assaults (including obscene comments and rumors)

3

intensified. Id. at 6-7. A few employees (including Long) were interviewed, no remediatory or disciplinary actions were taken by Defendant, and on September 30, 2014 Plaintiff received notification that the investigation was closed.

Within a few days, in early October, 2014, she was contacted by another Human Resources employee who offered her reassignment to another work site, which Plaintiff declined. The Human Resources employee responded that Plaintiff's harassment was her parent's fault for "making her so pretty." Id. at 7-8. Within another few days, Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC" and "EEOC Charge"), including specification of a "continuing action" and detailing the "ongoing" sexual harassment and hostile work environment. Id. at 8, 13; see also Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss ("Plaintiff's Brief in Opposition") at 3. Approximately two (2) weeks thereafter, Defendant held a one-day "workplace civility" training for North Park employees, where Plaintiff was – without prior knowledge and without consent – made to recount specific instances of sexual harassment in front of all other attendees (*i.e.*, the exclusively male laborers).

Plaintiff's abusive working conditions continued and in early November, 2014 she was re-assigned to work exclusively, and in relative isolation, at the skating rink in the park, with a reduction in work privileges. Id. at 9; see also Defendant's Brief in Support at 3 ("Plaintiff was temporarily reassigned to a different work location . . . ."). In December, 2014, Long – Plaintiff's principal victimizer – was reassigned to another park - with weekends off, more convenient work hours and lighter duties- from whence he continued to spread vicious statements about Plaintiff.

In March, 2015, Coda – the only individual who attempted to defend and seek redress for Plaintiff – was transferred from the North Park facility where he had worked for 37 years, and Plaintiff was returned there in April (the skating rink was closed), and continued to be subject to vulgar name-calling, rumors and harassment.  Id. at 9-10.  Her new supervisor, Rich Daniels ("Daniels") directed her to "grow up" and "get over it" and her conditions of employment worsened.  Plaintiff's anxiety and depression, emotional and physical distress, and panic attacks under these protracted and severely adverse conditions of employment caused her to request unpaid leave under the Family and Medical Leave Act.  After taking short term leave, she learned that Supervisor Daniels "promised" others that she would not return, or would be purposefully subjected to continuing harassment if she did.  Id. at 10-11.  Contemporaneous with her April 12, 2015 Complaint,[3] she therefore tendered her resignation.

Defendant's Motion to Dismiss and Brief in Support (ECF No. 16) were filed on July 30, 2015 and Plaintiff's Brief in Opposition (ECF No. 17) was filed on August 12, 2015.

### III. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007); Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[3] Plaintiff received her Notice of Right to Sue from the EEOC on March 27, 2015.  Id. at 14,  Ex. 1.

inference that the defendant is liable for the misconduct alleged."). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (citing Twombly, 550 U.S. at 556-57).

Recently, the United States Court of Appeals for the Third Circuit aptly summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir.2013).

Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014).[4]

---

[4] The Court of Appeals for the Third Circuit had previously set forth the following two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's

**IV. Analysis**

    **A. Hostile Work Environment**

Defendant asserts that Plaintiff cannot maintain her claim for a hostile work environment because her allegations are insufficient to establish a *prima facie* case for liability where the alleged harassment was by co-workers and she has "failed to allege facts that would establish" Defendant's *respondeat superior* liablity. Defendant's Brief in Support at 12 (citing the elements of hostile work environment claim as set forth in Huston v. Proctor & Gamble Paper Products Corp., 568 F.3d 100, 104 (3d Cir. 2009)). Defendant further asserts that acts of harassment occurring after Plaintiff's EEOC Charge are outside this Court's jurisdiction because Plaintiff failed to exhaust her administrative remedies with respect to such acts. Id. at 16.

    As Defendant observes, the employer is liable for non-supervisory co-worker harassment if (a) the employer failed to provide a reasonable avenue for complaint, or (b) it knew or should have known of the harassment and failed to take prompt and appropriate remedial action. See id. Defendant's briefing ignores the Amended Complaint's assertion that Defendant failed to provide reasonable policies/procedures for reporting. See Plaintiff's Brief in Opposition at 13 (quoting Complaint allegation that "Allegheny County failed to offer Plaintiff a reasonable

---

        entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See* Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. Aug. 18, 2009).

avenue through which to complain . . . and failed to appropriately train . . . employees in policies or procedures for reporting . . . ."). Moreover, its assertion that it took "prompt and appropriate remedial action" because Coda "repeatedly warned and reprimanded the male employees" is patently meritless, particularly in light of Defendant's acknowledgment that "[g]ranted, Plaintiff alleges that conduct continued after Coda reprimanded those employees." Defendant's assertion that its response, while not "perfect" was sufficiently "reasonably calculated to prevent further harassment"[5] cannot support dismissal where Plaintiff alleges that her immediate supervisor issued warnings repeatedly and was without authority to otherwise sanction or address male laborers' victimization of Plaintiff, that his warnings were thus not surprisingly ineffectual, and that his reports to other of Defendant's employees up the supervisory ladder were ignored.[6] The Court also observes Plaintiff's allegation that Coda was removed from supervisory contact with Plaintiff – via his transfer from North Park – shortly prior to Plaintiff's reassignment.

Defendant's assertions that its remedial actions subsequent to Plaintiff's Summer, 2014 reporting to Maintenance Supervisor Mangretta, an acknowledged "management employee", were sufficient to warrant dismissal of her claims are similarly meritless where Defendant bases this ground for dismissal on its promptly beginning an investigation, holding a training session several months later, temporarily reassigning Plaintiff, reassigning her primary harasser Long,

---

[5] See id. at 13.

[6] Compare id. at 13, n. 3 (Defendant's footnoted assertion that Plaintiff's complaints to Coda were inadequate because "there is no allegation that Coda is a management-level employee whose knowledge could be imputed to" Defendant) with Plaintiff's allegation that she was provided no procedures/policies for the warned-of sexual harassment, and reported abuses to her supervisor, whom she understood to be reporting the sexual harassment up Defendant's management chain. See also Plaintiff's Brief in Opposition at 13 (noting Plaintiff's averments that Coda repeatedly reported the abuse to his superiors, was untrained in appropriate handling of harassment claims, and was given no authority to take any action reasonably calculated to end harassment).

8

and assertedly stopping any further "overt" acts of harassment and rendering any subsequent harassment insufficiently severe or pervasive to maintain a cause of action.  See id. at 13-15.  The allegations of the Amended Complaint are as set forth, *supra*, and do not comport with Defendant's glossed characterizations.  See *supra* (discussing, *e.g.*, Complaint allegations that Defendant's "investigation" was inadequate and was closed with no corrective or disciplinary action, that Plaintiff was blamed for inciting her abuse and harassment through attractiveness, that Plaintiff was transferred against her wishes to an isolated work environment with reduced work privileges, that her primary harasser was transferred to substantially more favorable work privileges/conditions, that harassment of scurrilous, humiliating and vitriolic nature continued, and that her supportive immediate supervisor Coda was transferred/replaced prior to Plaintiff's retransfer in Spring 2015).  See also Plaintiff's Brief in Opposition at 15-16 (noting that Defendant's assertions with regard to post-Mangretta events are "contrary to Plaintiff's proffered factual averments" and recounting same).

Finally, as Defendant notes, the Third Circuit has held that "the scope of a resulting private civil action in the district court is defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  Hicks v. ABT Associates, Inc., 572 F.2d 960, 966 (3d Cir. 1978).  And where a claim was not specifically included, the Court may assume jurisdiction over additional charges "reasonably within the scope of the complainant's original charges".  Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984).  See also Defendant's Brief in Support at 5-6.  As cogently set forth in Plaintiff's Brief in Opposition, the scope of the discrimination claims within the EEOC Charge and thus properly before the Court is a matter to be "liberally construed".  Plaintiff's Brief in Opposition at 5 (citing Hicks, 572 F.2d at 965).  Thus, this Court also rejects

9

Defendant's assertion that Plaintiff cannot maintain a claim for any alleged acts of harassment occurring after the filing of her EEOC Charge.

   **B. Disparate Impact**

Defendant asserts that Plaintiff cannot maintain a claim for disparate impact as a matter of law because her allegations go to her "conditions of employment", rather than "hiring, promotions, [or] layoffs", *i.e.*, "employment opportunities", which are the sole basis for a "disparate impact sexual discrimination" claim as opposed to a disparate treatment claim. See Defendant's Brief in Support at 7.[7]  Defendant further asserts that any disparate impact claim should be dismissed for failure to provide sufficient statistical data. See id. at 9 ("To show causation, the plaintiff must present 'statistical evidence of a kind and degree sufficient to show that the practice in question has caused' the alleged prohibited effect.") (quoting Stagi v. Nat'l R.R. Passenger Corp., 391 F. App'x 133, 136 (3d Cir. 2010)).

First, it appears to this Court that Defendant misapprehends the distinction between disparate impact and disparate treatment claims.  The distinction Defendant asserts as between Title VII's §2000e-2(a)(1), prohibiting the failure or refusal to hire or the discharge of an individual, or other discrimination against an individual with respect to compensation, terms, conditions or privileges of employment owing to membership in a protected class (which Defendant labels "disparate treatment"), and §2000e-2(a)(2), prohibiting limitation, segregation or classification of employees or applicants in any way which would deprive/tend to deprive a protected individual of employment opportunities or affect his/her status as an employee (which Defendant labels "disparate impact"), is not borne out by the statutory provisions or interpretation thereof.

---

[7] See also id. at 9 ("Plaintiff's allegations do not establish a *prima facie* case of disparate-impact discrimination because there is no hiring or promotion policy or practice at issue.").

Defendant asserts that Plaintiff's allegations regarding its faulty sexual harassment policies/practices do "not allege the existence of a facially neutral policy or practice that has a disparate impact on a protected group's employment opportunities or employee status." Defendant's Brief in Support at 8. It appears to this Court, however, that while the statutory provisions cited describe forms of civil rights employment violations, disparate treatment is a *method of analyzing and evaluating a Title VII claim* through the plaintiff's evidence of subjective intent, while disparate impact is a method utilizing statistical evidence of impact regardless of evidence of intent. See, *e.g.*, Lewis v. City of Chicago, 560 U.S. 205, 211 (2010) ("Congress allowed claims to be brought against an employer who uses a practice that causes disparate impact, whatever the employer's motives . . . ."); Healey v, Southwood Psychiatric Hosp., 78 F.3d 128, 131 (3d Cir. 1996) (observing that "[i]n bringing a Title VII sex-discrimination claim, two different theories of liability are available to the plaintiff: disparate treatment and disparate impact" and that "[u]nder a disparate impact theory, liability is established when a facially neutral policy affects members of a protected class in a significantly discriminatory manner"); Ferguson v. E.I. duPont de Nemours & Co., 560 F. Supp. 1172, 1194 (D. Del. 1983) ("It is now well settled that a plaintiff may establish liability under Title VII under two distinct legal theories: first, disparate treatment which focuses upon the discriminatory motive underlying the treatment of members of protected classes . . .; and second, disparate impact which focuses upon the outcome regardless of how benign the motive underlying the treatment might have been . . . . The disparate impact theory is applicable whenever 'practices that are facially neutral in their treatment of different groups in fact fall more harshly on one

11

group than another and cannot be justified by business necessity.' ") (extensive citations omitted).[8]

In addition to the Court's rejection, for reasons set forth above, of Defendant's asserted entitlement to dismissal of this claim based on the scope of the statutory provisions or Defendant's "opportunities" or "conditions" distinction, the Court observes that Plaintiff has alleged disparate impact in hiring and in termination (*i.e.*, effects within Defendant's own disparate impact definition).

More specifically, Plaintiff expressly alleges that the gross under-representation of women in Defendant's Department of Public Works reflects "the impact of inadequate harassment complaint and investigation policies" disadvantaging women, and that Defendant's business practices "undermin[e] female employees' abilities to seek redress for . . . or to curtail . . . harassment" and "allows [harassers] to continue without accountability". She also expressly alleges and reiterates through discussion of Defendant's objectionable policies and practices that "fear of inadequate policies and the failure in enforcement in minority protections serve as a barrier to . . . entry in a field where less than 10% of the employees are female". Amended Complaint at 17-20. See also id. at 22 ("The aforementioned failure[ ] . . . disparately impacts women as it enforces the status quo vis-à-vis statistically imbalanced gender-based employment demographics by serving as a barrier to entry for female candidates . . . ."); Plaintiff's Brief in

---

[8] See also EEOC Compliance Manual ("EEOCCM"), Section 10, Employment Discrimination, 2006 WL 4672890 (noting, in discussion of discrimination in *compensation* (*i.e.*, a condition, not opportunity, of employment) that disparate impact analysis provides "another analytical tool for determining whether compensation discrimination has occurred"); Plaintiff's Brief in Opposition at 8-10 (observing that disparate impact discrimination is not limited to employment opportunities or employment status, or a "hiring or promotion policy or practice as Defendant claims"; rather, it is established if the plaintiff "demonstrates that a respondent uses a particular employment practice that cause a disparate impact on the basis of [a protected class] and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity") (quoting 47 U.S.C. § 2000e-2(k)(1)(A)(i)).

Opposition at 12. That is, Plaintiff presents, in light of the specific allegations, the facially plausible assertion that Defendant's (a) facially-neutral paucity of policies or procedures for hostile work environment concerns/circumstances, (b) unapologetic view of potential/actual harassment as a condition of employment, and/or its (c) "blame the victim", take-it-or-leave-it attitude to redress, deters/bars individuals unwilling to subject themselves to violations of their constitutionally protected rights from employment within the Public Works Department of the Defendant County, with a resultant disparate adverse effect on a protected group. Plaintiff also alleges that the continued, intolerable degree of sexual and retaliatory abuse facilitated and unaddressed owing to Defendant's policy and procedural failures ultimately resulted in her constructive discharge. Id. at 23-24. Compare Defendant's Brief in Support at 9 (asserting that Defendant's policies "did not impact Plaintiff's employment opportunities in any way" because she "did not get fired and was not denied a promotion, and her employment status . . . remained unchanged").

Finally, Defendant's assertion of entitlement to dismissal on the basis of Plaintiff's failure to evidence supporting statistical data that shows a significant disparity as to female employees caused by its policies is entirely unfounded. As Defendant is or should be aware, an ultimate standard of proof, including that regarding the form/nature/specificity and quantity of statistical evidence in a disparate impact claim, simply does not provide grounds, via application of that standard to the Complaint allegations, for grant of a Motion to Dismiss. Compare Defendant's Brief in Support at 10 (discussing a plaintiff's "burden" of proof as requiring statistical disparity sufficient to raise "an inference of causation") with Plaintiff's Brief in Opposition at 10 ("The Plaintiff does not need to definitively establish each element of a *prima facie* showing at the motion to dismiss stage, rather the Court should determine whether the

13

facts, if true, plausibly state a cognizable claim for relief."). See also, *e.g.*, United States of America v. Commonwealth of Pennsylvania, No. 1:14-CV-1474 (Rambo, J., U.S. Dist. M.D. Pa. May 21, 2015) (discussing the "much less onerous" burden a disparate impact plaintiff must meet to survive a motion to dismiss and noting that "under the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim").[9]

### C. Constructive Discharge

Defendant asserts, as it does with respect to Plaintiff's post-EEOC filing hostile work environment allegations, that Plaintiff may not include in her pleadings before this Court allegations regarding events occurring after her EEOC Charge because she has failed to exhaust her administrative remedies, and these matters therefore remain outside this Court's jurisdiction. See Defendant's Brief in Support at 6 ("Since Plaintiff did not raise the issue of constructive termination in her EEOC Charge, this Court has no jurisdiction over such a claim unless it is fairly within the scope [of the Charge or investigation] . . . . Plaintiff was working when she received her Right to Sue Letter . . . Therefore, Plaintiff could not have included a claim for constructive termination in her EEOC charge, nor could such a claim fall within the scope of any investigation . . . . As such, Plaintiff's claim . . . cannot fall within the scope of this Court's jurisdiction."). The assertion is as erroneous as to Plaintiff's constructive discharge claim as it is to her hostile work environment claim, and for the same reasons. See *supra*. Moreover, as Plaintiff observes, the United States Supreme Court has provided that a constructive discharge claim "stems from, and can be regarded as an aggravated case of, sexual harassment or hostile

---

[9] The Court further notes the inappropriateness of Defendant's assertion of Plaintiff's failure to allege specific information presently within Defendant's knowledge and control as grounds for pre-discovery dismissal. See Defendant's Brief in Support at 10 (asserting failure to "allege the number of sexual harassment complaints generally or those where the complainant was adversely affected by the County's allegedly inadequate policy").

work environment." Plaintiff's Brief in Opposition at 4 (citing Pennsylvania State Police v. Suder, 542 U.S. 129, 146 (2004)).[10]

Plaintiff complained to the EEOC of ongoing sexual discrimination, and her constructive discharge was the alleged result of a hostile work environment so severe that a reasonable person would be compelled to resign, *i.e.*, it arose from the same core grievance and is fairly within the scope of the EEOC Charge of ongoing discriminatory actions. See id. at 6-7 (articulately observing that "Plaintiff complains of ongoing discrimination, and later alleges facts arising after filing with the EEOC which support that continuing discrimination was never mitigated or abated. . . . Defendant could have foreseen that Plaintiff would eventually be compelled to resign . . . . [T]he constructive discharge . . . and the concomitant claim . . never would have arisen but for the hostile work environment Plaintiff suffered and complained of to the EEOC."). Accordingly, the Court rejects Defendant's assertion that she has failed to meet the jurisdictional prerequisites for this cause of action, or any other contained in the Amended Complaint.

---

[10] In addition, the Third Circuit previously expressly held that there is no separate administrative filing prerequisite to a claim of retaliatory discharge where the plaintiff-employee's EEOC Charge has brought claims for Title VII violations and retaliation. Id. at 5-6 (quoting Walters v. Parsons, 729 F.2d 233 (3d Cir. 1984) (noting that where "discriminatory actions continue after the filing of an EEOC complaint, . . . the purposes of the statutory scheme are not furthered by requiring the victim to file additional EEOC complaints and re-start the . . . waiting period").

## V. Conclusion

For the reasons aforesaid, Defendant's Motion to Dismiss (ECF No. 15) will be denied in accordance with this Court's Order on this date.

Dated: September 9, 2015

By the Court:

Lisa Pupo Lenihan
United States Magistrate Judge

cc: Counsel of record