**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JUSTINA BOGASKI, | ) | |
| | ) | Civil Action No. 2:15-cv-00487 |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| v. | ) | |
| | ) | |
| COUNTY OF ALLEGHENY, | ) | |
| PENNSYLVANIA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION ON PLAINTIFF'S AND DEFENDANT'S
CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.  Summation**

For the reasons set forth below, Defendant's August 11, 2016 Motion for Summary

Judgment (ECF No. 50) will be granted as to Plaintiff's claim of disparate impact in violation of

Title VII, and denied in its remainder.  Plaintiff's August 9, 2016 Motion for Summary Judgment

(ECF No. 45) will be denied.

This case was filed by Complaint on April 12, 2015 (ECF No. 1), and Amended on July

6, 2015 (ECF No. 11).  Plaintiff, who resigned from Defendant's employment with the filing of

her Complaint, alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and

the Pennsylvania Human Relations Act ("PHRA").  More specifically, Plaintiff filed claims for

subjection to a sexually hostile work environment, disparate impact, and constructive discharge.

The Motion to Dismiss filed by Defendant County of Allegheny ("Defendant") on July 30, 2015

(ECF No. 15) was denied by this Court's Order of September 9, 2015 (ECF No. 19).  Following

review of the current record and pleadings, the Court finds that there are questions of material fact that preclude summary judgment for either party as to Plaintiff's hostile work environment and constructive discharge claims, but not as to disparate impact.

## II.  Factual and Procedural History

As noted in this Court's Memorandum Opinion on Defendant's Motion to Dismiss (ECF No. 18) ("Opinion on Motion to Dismiss"), Plaintiff filed an Amended Complaint (ECF No. 11) chronicling a more than two year employment history allegedly "replete with disturbing instances of (a) gender-based discrimination and retaliation, (b) extensive personal attacks/vilification, and (c) at best inept, indifferent and/or delinquent institutional response and at worst institutional disregard for and further violation of constitutionally-protected rights." ECF No. 18 at 2.

Plaintiff indicated that during her hiring, as the sole female "laborer" (employees responsible for park cleaning and maintenance) in Defendant's Public Works Department, she was warned of likely sexually explicit and offensive speech, but provided no guidance for reporting or redress of sexual harassment.  That is, "Defendant essentially presented (a) Plaintiff's acceptance of employment as a laborer in its Public Works Department as an assumption of the risk of sexual harassment and (b) violation of the protections of, *e.g.*, Title VII, as an inherent condition of employment."  Opinion on Motion to Dismiss, ECF No. 18, at 2 (citing Amended Complaint at 2-3).  Subsequent to discovery and in the pending Motions, the parties acknowledge Plaintiff's receipt on employment of an Employee Handbook (a) asserting Defendant's prohibition of sexual discrimination, harassment, or retaliation and (b) identifying by title those to whom violations should be reported, including as a first-line, her "supervisor". *See, e.g.*, Defendant's Memorandum in Support of Motion for Summary Judgment ("Defendant's

Memo in Support"), ECF No. 51, at 4-5. Defendant also asserts Plaintiff was shown an instructive video dealing with sexual harrasment.  *See* Defendant's Reply Brief in Support of Motion for Summary Judgment ("Defendant's Reply in Support"), ECF No. 65, at 2.

Plaintiff further alleged she was subjected to sexually inappropriate and offensive comments by male staff, particularly laborer Tom Long ("Long"), who in March, 2013 slapped Plaintiff's buttocks in the presence of co-workers, Country tradesmen and Foreman Jim Kelly ("Kelly").  Her objections triggered a "campaign of sexual harassment, bullying, verbal abuse and retaliation" by Long and other co-workers.  Specific instances alleged included vandalization of her property (such as tearing apart her boots and filling them with dirt and bugs, spraying her vehicle with phlegm/spit, blowing dirt/debris into her open car windows), name-calling (such as referring to Plaintiff as a "bitch") and "vicious, sexually-based, unfounded rumors alleging intimate relations with co-workers".  Opinion on Motion to Dismiss, ECF No. 18, at 3 (citing Amended Complaint).  These allegations now have evidentiary support and raise material fact questions.  *See* pleadings of record, deposition testimony cited therein, and discussion, *infra*.  *See also, e.g.*, Plaintiff's Brief in Support of Motion for Summary Judgment ("Plaintiff's Brief in Support"), ECF No. 46, at 6 (noting that Long's slapping Plaintiff is disputed); Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Response in Opposition"), ECF No. 62, at 4-6 (discussing testimony and Kelly's self-contradicted statements); *id.* at 7-8 (discussing questions of material fact as to other incidents). Plaintiff further alleged that Foreman Kelly or Plaintiff's North Park Supervisor, Gil Coda ("Coda") observed and/or were made aware on an on-going basis of the harassment, and Plaintiff stopped using common area facilities.  Plaintiff alleged that although Coda repeatedly warned/verbally reprimanded Plaintiff's co-workers, and reported the abuse to his supervisors, no action was

taken by Defendant.  Subsequent to discovery and in the pending Motions, the parties appear to concur that Coda reprimanded Plaintiff's co-workers, and there are material fact questions regarding his report of abuse to higher-level supervisors and/or the adequacy or appropriateness of any action taken by Defendant employer.  *See* pleadings of record, deposition testimony cited therein, and discussion, *infra; see, e.g.*, Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Brief in Opposition", ECF No. 56, at 5-6 ("Plaintiff did not know that Coda was not telling his supervisors downtown all he knew of what she was experiencing."); Plaintiff's Brief in Support, ECF No. 46, at 11 ("Coda either failed to report these incidents, or he reported the incidents and no action was taken.").  Examples of continuing abuse included alleged "plantings of a snake and a blood-soaked feminine pad inside Plaintiff's work vehicle".  *See* Opinion on Motion to Dismiss, ECF No. 18, at 3.  These allegations now have evidentiary support and material fact questions.  *See, e.g.*, Defendant's Response in Opposition, ECF No. 62, at 12-14 (discussing fact questions).  The present record and pleadings also discuss other disputed material facts, including anonymous complaints to Defendant about Plaintiff's work, and Park Supervisor Coda's defense of her work; someone's urinating in Plaintiff's work vehicle; and Long's regularly referring to Plaintiff as "bitch" or "Barbie" and making public comments about her body.  *See, e.g.*, ECF No. 51 at 15-16; Plaintiff's Brief in Opposition, ECF No. 56, at 6-7; Plaintiff's Brief in Support, ECF No. 46, at 3-4; Defendant's Response in Opposition, ECF No. 62, at 14-16.

Although Plaintiff was contacted by Defendant's Department of Human Resources ("DHS") in Summer, 2014, she alleges that the details of her purportedly confidential conversation were quickly widespread and the retaliatory assaults (including obscene comments and rumors) intensified.  Plaintiff alleged Defendant interviewed a few employees (including

Long), took no remediatory or disciplinary action, and closed the investigation in September, 2014. When she declined proffered reassignment to another work site shortly thereafter, the DHS employee blamed Plaintiff's harassment on her physical appearance. A few days later, Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC" and "EEOC Charge"), including a "continuing action" and "ongoing" sexual harassment and hostile work environment. *See* Opinion on Motion to Dismiss, ECF No. 18, at 3-4.[1] Again, these allegations have evidentiary support and disputed material facts.

Plaintiff further alleged that: Defendant then held a "workplace civility" training for North Park employees, and required Plaintiff to recount instances of sexual harassment. Plaintiff was re-assigned to the isolated skating rink in the park with reduced work conditions/benefits. Her primary victimizer, Long, was willingly reassigned to another location with improved work privileges. Coda was subsequently transferred from the North Park facility where he had worked for decades. Plaintiff was transferred back to the North Park facility in April, 2015 and continued to be subject to worsening harassment under an unsympathetic new supervisor, Rich Daniels ("Daniels"). In response to emotional and physical distress, she requested unpaid leave under the Family and Medical Leave Act (the "FMLA"). She learned that Daniels promised others that she would be subjected to continuing harassment if she returned. Contemporaneous with her April 12, 2015 Complaint, she tendered her resignation. *See* Opinion on Motion to Dismiss, ECF No. 18, at 4-5 (citing Amended Complaint). Again, subsequent to discovery, there are material fact questions related to many of these allegations. *See, e.g.*, Plaintiff's Concise Statement of Material Facts, ("Plaintiff's CSMF"), ECF No. 47 (appearing to omit, *e.g.*, factual assertions supportive of events alleged at the training session, an improvement in Long's

---

[1] Plaintiff received her Notice of Right to Sue from the EEOC on March 27, 2015. *See* Amended Complaint, ECF No. 11, at 14, Ex. 1.

working conditions/privileges on transfer, or Daniels' conduct during/after Plaintiff's FMLA absence). In the subsequent pleadings, Plaintiff further alleges, and provides evidentiary support for, communication with Defendant during her FMLA leave advising that she did not want to resign but would be forced to do so if the years-long adverse work environment at North Park and the hostility and harassment of her new supervisor and co-workers remained unremediated. *See* Plaintiff's Brief in Opposition, ECF No. 56, at 10-11.

### III. <u>Standard of Review</u>

Summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). *See also* Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, (1986). The moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support the claim; rather, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact. *See* Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir.1992). *See also* Celotex, 477 U.S. at 324 (observing that Rule 56(e) permits a summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves).

The inquiry to be made is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." The non-moving party "must be able to produce evidence that 'when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor.'" SEC v. Hughes Capital Corp., 124 F.3d 449, 452 (3d Cir.1997) (quoting Kline v. First W. Gov't Sec., 24 F.3d 480, 484 (3d Cir.1994)). If the non-moving party fails to present evidence sufficient to establish an "element essential to that party's case, and on which that party will bear the burden of proof at trial", summary judgment is appropriate. Celotex, 477 U.S. at 322. Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)(2). Where the non-moving party has presented a genuine issue of a material fact, *i.e.*, one whose resolution may affect the outcome of the case by a reasonable jury under applicable law, summary judgment is precluded. Anderson, 477 U.S. at 247-49.

## IV. <u>Analysis</u>

### A. **Hostile Work Environment**

As Defendant observes, to establish a claim under Title VII and the PHRA for gender-based employment discrimination due to an intimidating or offensive work environment, a plaintiff must show: (1) she suffered intentional discrimination because of her gender, which (2) was pervasive and regular; (3) detrimentally affected her, and (4) would detrimentally affect a reasonable person of her gender in that position. *See* Defendant's Memo in Support , ECF No. 51, at 3 (citing Tucker v. Merck & Co., 131 Fed. Appx. 852, 858 (3d Cir. 2005); West v.

Philadelphia Elec. Co., 45 F.3d 744, 753 (3rd Cir. 1995)).[2]  Plaintiff must also show the

existence of *respondeat superior* liability.  *See, e.g.*, Mandel v. M & Q Packaging Corp., 706

F.3d 157, 167 (3d Cir. 2013).  Defendant also correctly observes that when the harasser is the

victim's "co-worker or other non-supervisor . . . employer liability attaches 'only if the employer

failed to provide a reasonable avenue for complaint, *or, alternatively*, if the employer knew or

should have known of the harassment and failed to take prompt and appropriate remedial

action.'"[3]

### 1.  Reasonable Avenue of Complaint

Defendant first asserts that Plaintiff's hostile work environment claim "fails as a matter

of law because Defendant provided a reasonable avenue of complaint for . . . sexual harassment

allegations" via the Allegheny County Employee Handbook which Plaintiff received on January

7, 2013 and failed to follow.  ECF No. 51 at 3-5.  Defendant recounts the provisions of the form

Acknowledgment and Handbook[4] but fails to provide any authority for its assertion that the

---

[2] The same legal standard applies to Plaintiff's claims under the Pennsylvania Human Relations Act ("PHRA") as to her claims under Title VII.  *See* ECF No. 51 at 3 (citing McCloud v. United Parcel Serv., Inc., 543 F. Supp. 2d 391, 398 (E.D. Pa. 2008), aff'd, 328 F. App'x 777 (3d Cir. 2009)).

[3] *Id.* at 3 (citing Miller v. Thomas Jefferson Univ. Hosp., 908 F. Supp. 2d 639, 653–54 (E.D. Pa. 2012), aff'd, 565 F. App'x 88 (3d Cir. 2014)) (emphasis added).

[4] See ECF No. 51 at 4-5 ("The acknowledgement form . . . states that 'I acknowledge that the Handbook contains the complete text of the Allegheny County Anti Discrimination – Harassment – Retaliation Policy and Complaint and Report Procedure. . . . I understand that Allegheny County prohibits discrimination against or harassment of any person because of his or her . . . sex . . . . Prohibited conduct includes unwelcome statements or conduct that have the purpose or effect of interfering with another's work performance or creating an intimidating, hostile, or offensive work environment. I understand that Allegheny County also forbids retaliation against any employee because he or she has reported violations of this policy. I understand that I must report any violations of this policy using the specified Complaint and Report Procedure within this policy.'" ) (citing Defendant's Concise Statement of Material Facts ("Defendant's CSMF"), ECF No. 52, at ¶ 4).

general Handbook language in and of itself provided Plaintiff a sufficient "reasonable avenue of complaint".[5]

       As to Plaintiff's alleged failure to follow these policies, Defendant proffers no authority for an assertion that exhaustion of its Handbook remedies was a prerequisite to this action. *Cf.* Opinion on Motion to Dismiss, [ECF No. 18](). To the contrary, Plaintiff filed her complaint with the EEOC and received her Notice of Right to Sue. *See* n. 1, *supra.* To the extent Defendant intends another variation on an assertion that Plaintiff is summarily unentitled to relief because she did not personally pursue her complaints of ongoing abuse "up the ladder", the Court rejects any such assertion.[6] *Cf.* Plaintiff's Reply to Defendant's Response in Opposition (Plaintiff's Reply"), [ECF No. 66, at 8]() ("Defendants tell their employees to report harassment to their supervisors, but then disclaim any responsibility for those supervisors' knowledge."). Moreover,

---

See *id.* ("The Complaint/Report Procedure . . . provides that " . . . all employees share responsibility for ensuring that the workplace is free from all forms of harassment, discrimination and retaliation. If you believe that this policy has been violated, report the problem immediately using the Complaint and Report Procedure. Make your report of the situation to: *the Supervisor* OR the Department Director OR the Human Resources Representative for your department OR Allegheny County Department of Human Resources: Employee Relations. *If you choose to discuss the problem first with your supervisor* or someone else in your direct chain-of-command *and do not get a prompt or satisfactory response*," contact your Director or the Department of Human Resources immediately.") (citing [ECF No. 52 at ¶ 5]()) (emphasis added).

[5] The Court notes the absence of any specific information as to either the manner (verbal or written) or content (date/time, location, nature of complaint, identification of perpetrator, victim, witnesses, actions taken . . .) of the required report. It also notes the absence of any specific contact (name, telephone or address) information for the title-designations to whom a report may be made. *See* Plaintiff's Brief in Opposition, [ECF No. 56, at 2]() ("The policy refers merely to titles, but nothing indicates anyone explained to Plaintiff who held those titles or how to reach those individuals (the policy lacks even a phone number to call for more information.")). *Compare* Defendant's Reply in Support, [ECF No. 65, at 3]() (attesting that Plaintiff knew and saw "management-level employees").

[6] *See* [ECF No. 51 at 5]() ("Given that she acknowledged receipt of the County's reporting procedure, and given that she failed to follow it, Plaintiff's claim should be dismissed.").

if the question were pertinent, which this Court finds it is not - the record provides support for a reasonable finding in Plaintiff's favor. The Court observes the evidence (including recitations in Defendant's own briefing) that Plaintiff repeatedly reported sexual harassment and/or retaliation to her direct supervisor, North Park Supervisor Coda, who held a designated first-line reporting position, and whom she reasonably perceived to be providing prompt and supportive response in taking actions within his limited authority (admonishing perpetrator Long when he was specifically identified; and admonishing Plaintiff's other, exclusively male, co-workers when individual responsibility could not be identified owing to the alleged discriminatory culture). Had Plaintiff been obligated to follow the Handbook procedure to preserve her civil rights protections from sexual harassment (an assertion rejected by this Court, and one which marks a striking deviation from the jurisprudential framing of this question as one of the *employer's provision of a reasonable avenue of complaint*), there is reasonable evidence that Plaintiff (a) received a "satisfactory" (*e.g.*, best good faith) response from her direct supervisor although an ongoing/ultimately unsatisfactory response from Defendant, and (b) reasonably believed continued reporting and representation on her behalf by Supervisor Coda the most likely avenue to actual redress by Defendant – particularly given the alleged hiring presentation of Defendant's attitudes toward sexual harassment and Title VII, and the alleged culture to which she was subjected.[7] The supported allegations of a misogynistic work environment would also

---

[7] While the Court concurs with Defendant's citations to evidence that Plaintiff was "satisfied" with Supervisor Coda's responses on her behalf, it notes the absence of evidence that Plaintiff was satisfied with either Defendant employer's recalcitrance to enact any employment consequences on her harasser(s), or her continuing subjection to harassment by Long and other co-workers. *See, e.g.*, ECF No. 51 at 8 (noting that after Coda reprimanded Long for slapping Plaintiff, Kelly asked her if everything was ok and she responded: "[t]hat's fine. Keep [Long] away from me"); *id.* at 9 (citing Plaintiff's testimony that she believed Coda "was doing his best to stop" the harassment and acknowledgment that imposing consequences against a specific individual is difficult "without proof", *i.e.*, in the face of what the evidence suggests may have

reasonably support (a) belief that the situation was more likely to be remedied – if at all – by a supportive supervisory male than the female laborer subject to a protracted campaign of abuse and intimidation, and (b) continued entrustment of representation by said supervisor.

At bottom, summary judgment on Plaintiff's hostile work environment claim is precluded by material fact questions as to Defendant's provision of a reasonable avenue of complaint.

2. Prompt and Appropriate Remedial Action

Summary judgment on this claim is also precluded by the parties' failure to remove any material fact questions as to Defendant's assertions that (a) it neither knew nor should have known that Plaintiff was being subjected to working conditions in violation of Title VII prior to June, 2014 because she did not report verbal and physical abuses to supervisors higher than North Park Supervisor Coda prior to that time, and (b) it took prompt and appropriate remedial action against Title VII violations of which it was or should have been aware. *See* ECF No. 51 at 4-5; *see also* recounting of Defendant's specifically alleged and (disputedly) evidenced course of action, *supra*.

(a) Violations Occurring Prior to June, 2014

Defendant asserts entitlement to summary judgment as to any violations occurring prior to the date of Plaintiff's direct report to Maintenance Supervisor Mangretta, an acknowledged "management employee", because (a) neither Kelly nor North Park Supervisor Coda were "management-level" employees whose knowledge could be imputed to Defendant and (b) to the

---

been harassment and intimidation conducted in a culture of conspiratorial silence); *id.* at 11. *Cf. id.* at 10 (citing as support Jones v. Norton, 2008 WL 282251, at *5 (E.D. Pa. 208) ("noting that the plaintiff was satisfied *with the employer's remedial actions*") (emphasis added). *Cf. also* Plaintiff's Brief in Opposition, ECF No. 56, at 5 ("Defendants attempt to have this Court circumvent logic by arguing that because Plaintiff accepted the actions taken by her supervisors at the time they were taken, she was satisfied with the ultimate response.").

extent either's knowledge could be imputed, they took prompt and appropriate remedial action.
*See* ECF No. 51 at 5-10.  The record, however, reflects clear material fact questions preclusive of summary judgment for either party.

(i)  Imputation of Knowledge

First, Defendant correctly observes that "knowledge of sexual harassment may be imputed to the employer when the employee is employed to report or respond to sexual harassment", as where that employee is "in a position of administrative responsibility over the employee under him, such as a departmental or plant manager" and "usually has the authority to act on behalf of the employer to stop harassment, for example, by disciplining employees or changing their employment status or work assignments."  ECF No. 51 at 6 (quoting Huston v. Proctor & Gamble Paper Products Corp., 568 F.3d 100, 107 (3d Cir. 2009)).  It also correctly quotes the Third Circuit's "clarification" of the requirement "that a 'management-level' employee . . . have knowledge of allegations of sexual harassment as a pre-requisite to" imputation.  The Third Circuit explained "that mere supervisory authority over the *performance of work assignments* by other co-workers is not, by itself, sufficient" as "[i]t is not uncommon for a co-worker to be designated to oversee the performance by others of a specific task" but such a supervisor, who does not "generally regulate the workplace environment" is not a management-level employee. *Id.* at 6-7 (quoting Huston). Defendant expressly states Coda's position as "North Park supervisor for the purpose of *assigning work*" and Kelly's as a "laborer foreman".  *Id.* at 6 (emphasis added). The record raises material fact questions as to the significance of this distinction between Kelly and Coda's supervisory authority, including, *e.g.,* Coda's authority as North Park Supervisor to assign work (as opposed to merely overseeing its performance as a co-

worker) on a daily basis (and a concurrent ability to re-assign work)[8] and his authority to take action against sexual harassment as the North Park Supervisor and/or as a supervisor designated to receive civil rights violation reports by Defendant's Handbook.[9]

Moreover, even if Coda's knowledge were not imputed to Defendant, fact questions regarding Defendant's own maintenance of an open urinal - a condition of Plaintiff's employment addressed by the parties in their post-discovery pleadings - present sufficient independent grounds for denial of summary judgment.[10] A reasonable jury could certainly find the continued presence, and sanctioned routine use, of an open urinal in the North Park garage - to which Plaintiff, when hired as the sole-female laborer, reported to receive daily work

---

[8] *Cf.* Plaintiff's Brief in Opposition, ECF No. 56, at 9 ("Before he was transferred away from North Park, Coda assigned Plaintiff to work exclusively at the skating rink, generally a one-person job."). *Cf. also* Defendant's Reply in Support, ECF No. 65, at 6 (stating that, unlike Park Supervisor Coda, Kelly "was a fellow laborer who took care of job assignments when Coda was out of town").

[9] *Cf.* n 4, *supra* (Defendant's Handbook reference to Plaintiff's Supervisor as "in [her] direct chain-of-command").

[10] *See*, *e.g.*, Plaintiff's Brief in Opposition, ECF No. 65, at 3 ("[I]t is undisputed that men repeatedly used a urinal [at] work in front of the Plaintiff. Defendants have known of the existence of the urinal for years and have condoned its use. . . . Defendants still deny that its use was inappropriate vis-à-vis the Plaintiff and have made no attempts to address the issue or cease its use."); Plaintiff's Brief in Support, ECF No. 46, at 8 noting that Plaintiff repeatedly witnessed men urinating in front of her and verbally objected) (citing testimony of coworker Schwab); *id.* ("Allowing men to regularly and openly urinate in front of female employees, in a common area which their work requires they frequent is objectively offensive . . . .").

The Court was highly discomfited by Defendant's statement that "there is no evidence on record to support Plaintiff's assertion that 'Defendants have known of the existence of the urinal for years and have condoned its use.'" Defendant's Reply in Support, ECF No. 65, at 4. The Court notes that Defendant does not, by its wording, deny such knowledge or conduct. If Defendant intends to deny that it is the property owner of the North Park facility, or otherwise deny its knowledge of its North Park garage permanent fixture – *i.e.*, urinal - it should do so more clearly.

assignments and was otherwise present for job-related materials and duties during the work day[11] – to meet the elements comprising violation of Title VII. *See, supra* (noting that claim for gender-based employment discrimination due to intimidating or offensive work environment requires showing that (a) plaintiff suffered intentional discrimination because of her gender, which (2) was pervasive and regular; (3) detrimentally affected her, and (4) would detrimentally affect a reasonable person of her gender in that position).

(ii)  Appropriate Remedial Action

Defendant proceeds to assert that even if it was or should have been aware of Title VII violations prior to June, 2014, it is entitled to summary judgment on the basis of prompt and appropriate remedial action.  The record again evidences significant questions of material fact.

More specifically, the Court observes that the analysis turns on *Defendant's* prompt and appropriate remedial action and fulfillment of its obligations under Title VII.  Defendant correctly observes that "[a]n employer's remedial action is adequate if it is reasonably calculated to prevent further harassment."  ECF No. 51 at 7 (quoting Huston, 568 F.3d at 110).  However, Defendant's recitation of Supervisor Coda's (a) "reprimand" of Long for allegedly slapping Plaintiff's buttocks,[12] (b) his angrily/animatedly informing workers in the breakroom that he would "'go downtown' and get someone in trouble" if he identified those responsible for destroying her boots, (c) his gathering laborers and saying "there would be trouble" if he identified who spat on her car, (d) his private conservations with Plaintiff's co-workers, (e) his reprimand of Long for blowing debris into her work vehicle, (f) his ordering another employee to

---

[11] *See* Plaintiff's Brief in Support, ECF No. 46, at 3.

[12] *But see* Plaintiff's Brief in Opposition, ECF No. 65, at 4-5 ("Coda himself denied that he reprimanded Long.") (citing Coda Deposition at 69-70).

clean out Plaintiff's work vehicle, in the visor of which Plaintiff found a bloody feminine pad,[13] and (g) his warning co-workers that "if he found out who was responsible they would be fired"[14] do not entitle it to summary judgment. To the contrary, the litany of continued harassment and intimidation, and language of Coda's warnings, raise material fact questions of both (a) Coda's ability/authority to effectuate meaningful employment consequences for Title VII violations (as would usually/reasonably be the case where the Supervisor is designated in the violation reporting provisions of an Employee Handbook) and (b) more significantly for purposes of this portion of the analysis, the reasonableness – given its civil rights obligations - of an initial and/or continuing belief by the employer that Coda's reprimands and admonishments/warnings were or could – without more - be effective in preventing sexual harassment.[15] *Compare* ECF No. 51 at

_____

[13] *Cf.* Plaintiff's Brief in Opposition, ECF No. 56, at 9 (noting material fact question regarding presence of co-worker, John "Jack" Schwab, when bloody feminine pad was found).

[14] ECF No. 51 at 8-9.

[15] As previously noted in the Opinion on Motion to Dismiss, ECF No. 18, Defendant's assertion that it took prompt and appropriate remedial action because North Park Supervisor Coda repeatedly warned and reprimanded Plaintiff's co-workers must be considered together with the allegations, and evidence that sexual harassment and retaliation continued in part because Supervisor Coda was without – or perceived to be without - significant authority to impose meaningful employment consequences, no other inquiry was made and no actions were otherwise taken by Defendant, and Coda's recurrent warnings were therefore protractedly ineffectual.

In addition, given the material fact questions now in evidence as to Coda's failure to advise upper management of ongoing incidents/reports of sexual and retaliatory harassment against Plaintiff, Plaintiff duly notes that "it is disingenuous" to argue that such conduct would be "reasonable, certainly not as a matter of law." Plaintiff's Brief in Opposition, ECF No. 56, at 6.

In response to Defendant's assertion that "Coda's remedial actions seem to have worked" because the "incidents tapered off after the spring of 2013" (Long's blowing debris into her truck) and "spring of 2014 (*i.e.*, the feminine pad)", with no "other incidents of any note . . . between spring of 2014 and April 2015", the Court observes – as does Plaintiff – that Defendant omits Plaintiff's allegations and evidence of ongoing discriminatory sexual harassment in the form of, *e.g.*, offensive sexual slander. Defendant also omits reference to its first taking other

9-10 (asserting that "Coda's actions were adequate as a matter of law" because the Third Circuit has so held "where management undertook" a prompt investigation, spoke to the alleged harasser about the allegations and policy, and issued a warning) (citing Andreoli v. Gates, 482 F.3d 641, 644 (3d Cir. 2007)); *id.* (asserting, in a *non sequitur*, that Plaintiff's satisfaction "with Coda's response, further supports . . . a finding that Coda's actions were reasonably calculated to end the harassment"). *Cf. supra* n. 7.[16]

The Court also observes, as under the element of knowledge, *supra*, that the evidence now of record regarding Defendant's North Park garage urinal presents an independent basis for denial of summary judgment where there is evidence that Defendant knew or should have known that it was thereby in violation of Plaintiff's rights under Title VII and there is a correspondent absence of evidence that it took any action whatsoever to remediate that violation.

(b)  Violations Occurring After June, 2014

The Opinion on Motion to Dismiss, ECF No. 18, held that Defendant's asserted remedial actions subsequent to Plaintiff's Summer, 2014 reporting to Maintenance Supervisor Mangretta, an acknowledged 'management employee', were insufficient to warrant dismissal of her claims. They remain insufficient to warrant summary judgment  where Defendant's grounds essentially remain that it: promptly began an investigation, held a training session several months later,

---

action beginning June, 2014, *i.e.*, employee interviews and "retraining", and Plaintiff's re-assignment/removal to the skating rink until April, 2015. And Defendant omits reference to Plaintiff's evidence that she was removing her personal property from common areas and avoiding contact to avoid harassment in the face of the Defendant's ongoing failure to enforce its Title VII workplace obligations. *See, e.g.*, Plaintiff's Brief in Opposition at 6-7.

[16] The appropriateness of Defendant's asserted analogy - between a case holding a post-investigation warning of suspension or termination from a manager with apparent authority to impose further employment consequences and Coda's investigation and warnings - is affected by the material fact questions herein. *Cf.* ECF No. 51 at 10 (citing Knabe v. Boury Corp., 114 D.3d 407 (3d Cir. 1997)).

temporarily reassigned Plaintiff, reassigned her primary harasser Long, and assertedly stopped any further "overt" acts of harassment and rendering any subsequent harassment insufficiently severe or pervasive to maintain a cause of action.  *See* [ECF No. 18](#).

Defendant now cites to evidence that following Plaintiff's report to Mangretta in early June, 2014, it "interviewed a number of North Park employees" but did "not uncover[ ] who was responsible for the alleged incidents" but found Plaintiff's allegation "that Long had made an inappropriate comment" credible, "retrained Long" and scheduled training for other Public Works employees, informed Plaintiff to report further incidents, provided the name of a County Police detective, and closed its investigation on September 30, 2014.  [ECF No. 51 at 12](#). Defendant's factual assertions are inadequate to establish as a matter of law that it took "appropriate" remedial action "reasonably calculated" to stop gender-based harassment and intimidation.  *See* discussion, *supra*.[17]  They must be considered by a fact-finder together with Plaintiff's testimony and other evidence. *e.g.*, that Defendant's investigation was inadequate and was closed with no corrective or disciplinary action, Plaintiff was blamed for provoking harassment through attractiveness, Plaintiff was involuntarily transferred to an isolated work environment,[18] her primary harasser was willingly transferred to more favorable work

_____

[17] *See* Plaintiff's Brief in Opposition, [ECF No. 56, at 3](#) ("Whether the paltry investigation after the Plaintiff's June 2014 conversation with Mangretta was reasonable is a question of fact for a jury determination.").; *id.* at 7-8 (describing investigation and noting "a single 'retraining' session with Long"); Plaintiff's Brief in Support, [ECF No. 46, at 11](#) ("The investigation itself was opened in June and all interviews were completed by the end of June; yet nothing at all happened pursuant to the investigation until September, when Long was allegedly 'retrained' by Nagle, and the investigation was thereafter closed via letter on September 30. . . .  Nagle never conducted a second interview with the Plaintiff . . . no findings or recommendations were ever disclosed . . . .").

[18] The Court would be troubled by both aspects of a suggestion that (a) transferring a female employee subject to sexual harassment and retaliation to an isolated work assignment, with a reduction in other working conditions/benefits, is an "appropriate" response or "remedial" to

privileges/conditions, humiliating harassment continued, and Supervisor Coda was transferred/replaced prior to Plaintiff's retransfer from the skating rink back to her former duties requiring increased interaction with co-workers in Spring 2015.  *See* ECF No. 18; discussion, *supra*.  In response to Defendant's inclusion, in recitation of evidence that it took appropriate remedial action reasonably calculated to end harassment, that "Plaintiff did not report any further incidents to [the DHS employee who closed her case]", the Court observes that Plaintiff filed her EEOC action.  *See* ECF No. 51 at 12; *supra* at 4.[19]  Plaintiff also alleges, with relevant testimony of Defendant's employees Kelly, Schwab and Marlane Lord, as well as her own, being the subject of wide-spread sexual slander.  *See, e.g.*, Plaintiff's Brief in Support, ECF No. 46, at 4 (citing testimony of rumors regarding Plaintiff's sexual involvement with and/or gender-based manipulation of, coworkers and/or supervisors); *id.* (citing Spain v. Gallegos, 26 F.3d 439 (3d Cir. 1994) (rumors of use of sexuality with supervisor implicate gender-based stereotypes and constitute intentional discrimination); *id.* at 6.  *But see* Defendant's Response in Opposition, ECF No. 62, at 9-11 (discussing material fact questions regarding sexual rumors). Finally, the Court notes the independent considerations related to the North Park garage urinal as to which Defendant asserts/evidences no remedial action. Thus, the Court again finds questions of material fact precluding summary judgment for either party.

---

violations of Title VII in the workplace (b) because isolation of the victim adequately reduces direct, personal harassment and intimidation (as opposed to a continued campaign of, *e.g.*, sexual slander).

[19] *Compare* ECF No. 51, at 13 ("It is undisputed that Plaintiff never complained to any management-level employee again, further evidence that she failed to avail herself of the County's reporting procedure.") *with* Plaintiff's Brief in Opposition, ECF No. 56, at 8 (citing evidence of Plaintiff's reports to Nagle, during investigatory period closed without employment consequences to any co-worker or further communication with Plaintiff, of harassment and retaliation subsequent to their meeting).

### B. Constructive Discharge

This Court previously rejected Defendant's assertion of entitlement to dismissal of Plaintiff's constructive discharge claim on grounds of failure to exhaust administrative remedies. *See* Opinion on Motion to Dismiss, ECF No. 18, at 14-15. Defendant now asserts that, "in addition to [Plaintiff's] inability to establish the elements of a hostile work environment . . . , the working conditions created . . . were not sufficiently intolerable" to support liability for constructive discharge. ECF No. 51 at 14. Given the evidentiary record, and the nature of the material fact questions present *sub judice*, the Court is troubled by Defendant's citation to Lucas v. City of Philadelphia, 2013 WL 2156007, at *18 (E.D. Pa. 2013) ("Mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign."). *Cf.* Opinion on Motion to Dismiss, ECF No. 18, at 2, n.1 (noting Defendant's "somewhat troubling assertions regarding Plaintiff's "mere[]" allegations and "some missteps in how her . . . sexual harassment . . . was handled").

As discussed, *supra*, Plaintiff alleges and (disputedly) evidences that she was returned to the North Park facility in April, 2015, subsequent to Supervisor Coda's reassignment elsewhere, and under the daily director of a new North Park Supervisor who was antipathetic to her complaints of recurrent sexual and/or retaliatory harassment, directed her to "grow up", and instituted new/adverse employment conditions.[20]

---

[20] *Cf.* ECF No. 51 at 12 (identifying "factors indicative of constructive discharge" as "(1) a threat of discharge; (2) suggestions or encouragement of resignation; (3) demotion or reduction in pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job responsibilities . . . .") (citing Mandel v. M & Q Packaging Corp., 706 F.3d 157, 169-70 (3d Cir. 2013)).

Moreover, as noted in the Opinion on Motion to Dismiss, ECF No. 18, the United States Supreme Court directs that a constructive discharge claim "stems from, and can be regarded as an aggravated case of, sexual harassment or hostile work environment." Pennsylvania State Police v. Suder, 542 U.S. 129, 146 (2004)). And a fact-finder could certainly conclude, on determination of the disputed facts, that Plaintiff's constructive discharge was the result of a hostile work environment so severe that a reasonable person would be compelled to resign. *Cf.* Plaintiff's Brief in Opposition to Motion to Dismiss, ECF No. 17, at 6-7 (observing that where facts arose after EEOC filing which support that adverse employment conditions were "never mitigated or abated . . . . Defendant could have foreseen that Plaintiff would eventually be compelled to resign"). In response to Defendant's assertion that Plaintiff voluntarily left employment after an argument with another employee and her supervisor, the Court notes questions of material fact. *See, supra; see also, e.g.*, Plaintiff's Brief in Opposition, ECF No. 56, at 10 (asserting that when neither Defendant nor Supervisor Daniels took action against verbal harassment and slander of Plaintiff in 2015, she confronted the individuals "on her own, leading to an argument wherein her supervisor told her to grow up . . . . It is important to remember that . . . Plaintiff had also filed an EEOC Charge . . . which Defendants had never so much as answered."); *id.* at 10-11 (asserting that after this argument, Plaintiff took unpaid leave under the FMLA and her legal counsel unsuccessfully sought Defendant's remedial action/response). The Court finds sufficient evidentiary support and material fact questions precluding summary judgment for either party. *See* discussion, *supra*.

### C.  Disparate Impact

Defendant argues that Plaintiff does not have a triable claim for disparate impact based upon an assertedly insufficient process for addressing sexual harassment claims, for three reasons.

First, Defendant contends that a disparate impact claim under Title VII must involve disparity of employment opportunities, rather than a disparity in conditions of employment.  *See* Defendant's Memo in Support, ECF No. 51, at 17.  As it did in ruling on Defendant's Motion to Dismiss,[21] the Court rejects this contention.  Defendant can point to nothing in the text of the Civil Rights Act, or in its regulations, case law or underlying policy that would permit maintenance of policies that needlessly disadvantage a protected class merely because the burden falls upon working conditions rather than employment opportunities.  Indeed, Defendant's contention is belied by the very text upon which Defendant relies, as it expressly applies to practices which would "deprive any individual of employment opportunities or otherwise adversely affect his status as an employee."  42 U.S.C. § 2000e-2(a)(2), *quoted in* Defendant's Memo in Support, ECF No. 51, at 18.  The Act's employment of the disjunctive ("or otherwise") is patently inconsistent with Defendant's contention that this provision is limited to impact on employment opportunities.

Second, Defendant contends that a disparate impact claim must be supported by statistical analysis.  Although many reported cases describe disparate impact claims as statistically-based, there appears to be little if any authority actually addressing whether evidence supporting a *prima facie* showing of disparate impact must be statistical.  At least two Third

---

[21] *See* Opinion on  Motion to Dismiss, ECF No. 18, at 10-12.

Circuit cases, relied upon by Defendant, suggest a contrary rule. *See Aron v. Quest Diagnostics Inc.*, 174 Fed. Appx. 82, 83 (3d Cir. 2006), (*cited in* Defendant's Reply in Support, ECF No. 65, at 9) (reciting District Court ruling that plaintiff "failed to demonstrate through statistical *or other competent evidence* that [the defendant's practice] . . . had a disparate impact") (emphasis added); *Ramos v. EquiServe*, 146 Fed. Appx. 565, 567 (3d Cir. 2005) (same). In any event, the Court is not prepared to rule that disparity of impact may not be established by competent evidence that does not qualify as "statistical".

Ultimately, the Court need not decide this issue, because Plaintiff has not proffered any such "other competent evidence" of disparate impact in the present case. Defendant's third argument is that "there is no cause of action for a personal disparate impact – only for institutional disparate impact." ECF No. 65, at 9 (citing and quoting *Aron* and *Ramos*). This Court concurs with the District Court rulings recited in *Aron* and *Ramos* to the effect that a plaintiff's "own single instance of adverse impact, . . . [is] insufficient, without more, to show disparate impact under Title VII." *Aron*, 174 Fed. Appx. at 83; *Ramos*, 146 Fed. Appx. at 567. By definition, an impact can only be "disparate" in comparison to other impacts.

In the present case, Plaintiff's adverse impact claim is predicated on contentions as to the impact of Defendant's sexual harassment reporting and response process on her own case. *See, e.g.*, Plaintiff's Brief in Support, ECF No. 46, at 16-19. Plaintiff has not proffered evidence of any other woman who was adversely affected, or any similarly-situated man who was more benignly impacted, by the practices at issue.

Indeed, Plaintiff has not refuted Defendant's evidence that there has been no other sexual harassment complaint at the Department of Public Works since at least 2008. Instead, Plaintiff "questions" whether there actually were allegations of sexual harassment that were effectively

suppressed by Defendant's reporting process. Plaintiff's Brief in Opposition, [ECF No. 56, at 12-13](#).[22] However, such questions cannot fulfill Plaintiff's burden to come forward with evidence of actual disparate impact.

Plaintiff argues that "[t]he failures of Defendant's . . . policy will inevitably be borne disproportionately by female employees as the foreseeable complainants," and that "[t]hese failures affect every woman who has worked in the Department of Public Works . . . , and every female employee still working in the Department of Public Works who may be facing harassment"; and she concludes that "[g]iven that these same policies are still in place; it would be hard to imagine a better result for the next unfortunate woman who comes forward about harassment." Plaintiff's Brief in Support, [ECF No. 46, at 20](#); Plaintiff's Brief in Opposition, [ECF No. 56, at 13](#).

Even if the Court were to accept Plaintiff's assertions as to shortcomings in Defendant's harassment reporting policies and her inference as to the likely impact of those policies on potential or hypothetical complainants, the evidence nevertheless falls far short of meeting Plaintiff's burden. A showing that a challenged employment practice *would* adversely impact a protected class if it were applied is insufficient to show that the practice *did* disparately impact members of that class. Here, there is simply no evidence that any person other than Plaintiff was ever impacted by the same practices that Plaintiff complains of. Plaintiff's assertion that all female employees are affected because they "may be facing harassment" is speculation.[23]

---

[22] *Compare* Plaintiff's Brief in Support, [ECF No. 46, at 20](#) (conceding that "Plaintiff is the first employee to complain of sexual harassment since at least January 2008").

[23] The Court noted in its Opinion on Motion to Dismiss that Plaintiff alleged in her Complaint that Defendant's harassment response policies deter women from working at the Department of Public Works. *See* Opinion on Motion to Dismiss, [ECF No. 18, at 12-13](#). However, Plaintiff has

**V.  Conclusion**

For the reasons above, Defendant's August 11, 2016 Motion for Summary Judgment (ECF No. 50) will be granted as to Plaintiff's claim of disparate impact in violation of Title VII, and denied in its remainder; and Plaintiff's August 9, 2016 Motion for Summary Judgment (ECF No. 45) will be denied, both in accordance with this Court's Order on this date.

Dated: March 22, 2017

By the Court:

Lisa Pupo Lenihan
United States Magistrate Judge

cc:  Counsel of record

---

not adduced any evidence to support such allegations for purposes of the pending cross-motions for summary judgment.